**In re Frank John VACCARIELLO, III and Caron Courtenay Vaccariello, Debtors.**

No. 07–41034.

United States Bankruptcy Court, N.D. Ohio.

Aug. 22, 2007.

Kyle B. Smith, Jefferson, OH, for Debtors.

## MEMORANDUM OPINION

KAY WOODS, Bankruptcy Judge.

Before the Court is United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(1) ("Motion to Dismiss") (Doc. # 12). In what is a matter of first impression for this Court, the primary issue is whether Debtors' student loans may constitute "special circumstances" to overcome the presumption of abuse in the so-called means test. For the reasons set forth below, this Court finds that the Debtors have failed to rebut the presumption of abuse under 11 U.S.C. § 707(b)(2) and holds that, under the circumstances of this case, repayment of

Debtors' student loans does not constitute such special circumstances. Because this Court grants the Motion to Dismiss on the basis of a presumption of abuse, the Court will not address the alternative grounds for dismissal—*i.e.,* totality of the circumstances pursuant to § 707(b)(3).

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The following constitutes the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR.P. 7052.

## I.  PROCEDURAL BACKGROUND

Debtors Frank John Vaccariello and Caron Courtenay Vaccariello ("Debtors") filed a voluntary petition pursuant to chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") on May 4, 2007. Along with the petition, Debtors filed, among other documents, Schedules I and J, and Form B22A, Statement of Current Monthly Income and Means–Test Calculation (Chapter 7). On May 31, 2007, Saul Eisen, United States Trustee for Region 9 ("UST") filed United States Trustee Statement of Presumed Abuse ("Statement of Abuse") (Doc. # 11). That same day, UST filed the Motion to Dismiss, which urges that Debtors' case should be dismissed, pursuant to 11 U.S.C. § 707(b)(2), based on the presumption of abuse. UST also argues that Debtors have not fulfilled the procedural requirements in § 707(b)(2)(B)(ii).[1]

---

1.  UST alternatively argues that Debtors' case should be dismissed pursuant to § 707(b)(3) based upon the totality of the circumstances. In the event the means test does not give rise to a presumption of abuse, or the presumption is successfully rebutted by the debtor, § 707(b)(3) provides an alternative rationale

for dismissing the debtor's chapter 7 petition. UST argues for dismissal of Debtors' case under § 707(b)(2) and (3). Because this Court finds that UST has prevailed under § 707(b)(2), this Court will not address the totality of the circumstances analysis required by § 707(b)(3).

On July 13, 2007, Debtors filed certain amended documents (Doc. # 23) including Amended Schedule J and Amended Means–Test Calculation. Five days later, on July 18, 2007, Debtors filed Debtors [sic] Response to United States Trustee's Motion to Dismiss Case ("Response") (Doc. # 24). In the Response, Debtors concede that their "student loan payments are not a priority debt" (as originally scheduled), but argue that the "student loan payments constitute a 'special circumstance' under Section 707(b)(2)(B) to rebut the presumption of abuse." (Resp. at 1.) Debtors further state that their "disposable income is less than $250 per month." (Resp. at 2.) Accompanying the Response, Debtors filed Debtors [sic] Declaration in Support of Rebutting The Presumption of Abuse Pursuant to Section 707(b)(2)(B) ("Declaration") (Doc. # 25). Also on July 18, 2007, Debtors filed the following amended documents: Summary of Schedules, Schedule J, and Means Test (Doc. # 26).

## II. LAW

Section 707(b) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") provides for dismissal of a chapter 7 case when there is a presumption of abuse. Presumption of abuse may arise based upon a detailed calculation of the debtor's income and expenses over the course of the six-month period preceding the petition date—commonly referred to as the "means test." *See* 11 U.S.C. § 707(b)(2). The calculation is based on income and expenses recorded in Form B22A. Section 707(b)(2)(A)(ii) sets forth the methodology for calculating expenses to determine "current monthly in-

come." *See* § 707(b)(2)(A)(i) and § 101(10A).

Sections 707(b)(1) and (b)(2)(A)(i) read, in pertinent part:

(b)(1) After notice and a hearing, the court, ... on a motion by the United States trustee ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of this chapter....

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or

(II) $10,950.[2]

11 U.S.C. § 707 (West 2007).

Under the means test analysis, the Court is required to conduct a mechanical calculation of a debtor's ability to pay. *In re Haar*, 360 B.R. 759, 767 (Bankr. N.D.Ohio 2007)("The 'means test,' although enacted as a device to ensure that debtors with an ability to pay their debts, would actually do so—is a strict mechanical test. Its function, in essence, is to limit the court's discretion." (internal citations omitted)); *In re Gress*, 344 B.R. 919, 922 (Bankr.W.D.Mo.2006)("In enacting the means test, Congress intended to take away discretion from the courts as to high-

---

**2.** Pursuant to 11 U.S.C. § 104(b)(1), effective for cases filed on or after April 1, 2007, the dollar amounts in 11 U.S.C. § 707(b) were adjusted upward, superseding the previous amounts of $6,000, and $10,000, in § 707(b)(2)(A)(I) and (II), respectively. Since Debtors' case was filed on May 4, 2007, the adjusted amounts are applicable.

er income debtors, who were seen as abusers of the system.").

As Judge Eugene R. Wedoff, U.S. Bankruptcy Judge, Northern District of Illinois, explained in *Means Testing in the New § 707(b)*:

> [F]or purposes of the means test, debt secured even by such items as luxury vehicles, pleasure boats, and vacation homes would be deductible. Moreover, under a plain language analysis, the balance of a balloon mortgage that became contractually due during the five years after the bankruptcy filing—and perhaps even the total balance due on a defaulted mortgage that had been contractually accelerated—would be entirely deductible. However, if deductions of this sort allowed a wealthy debtor to avoid the presumption of abuse under the means test, an abuse might still be found in consideration of the "totality of the circumstances ... of the debtor's financial situation" pursuant to 707(b)(3).

Hon. Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr.L.J. 231, 274 (Spring 2005).

### III. ANALYSIS

In the instant case, the presumption of abuse arises because Debtors' current monthly income, as defined in § 101(10A), exceeds the threshold of $10,950 in § 707(b)(2)(A)(i). Amended Form B22A shows that Debtors have a monthly disposable income under § 707(b)(2) of $223.04. (Amended Form B22A, line 50.) Section 707(b)(2)(C) of the Bankruptcy Code provides that the amount listed on line 50 of Form B22A, in this case $223.04, multiplied by 60, is to be used to determine if a presumption of abuse arises. Because this amount equals $13,382.40, Debtors exceed the threshold amount for the presumption of abuse to arise under § 707(b)(2)(A)(i). (*See* line 52 of Amended Form B22A.)

■ The presumption of abuse, however, is exactly that—a presumption that is subject to being rebutted. Debtors assert that their student loan payments demonstrate special circumstances that rebut the presumption of abuse. (Resp. at 1.) Section 707(b)(2)(B) establishes how a debtor may rebut the presumption of abuse.

(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [sic] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amount determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,575, whichever is greater; or

(II) $10,950.

11 U.S.C. § 707(b)(2)(B) (West 2007).

■ The Code does not define "special circumstances," but merely provides some non-exclusive examples of what may be considered special circumstances. *See* § 707(b)(2)(B)(i). Analysis of special circumstances requires examination of the facts in each particular situation. *Eisen v. Thompson*, 370 B.R. 762, 772 (N.D.Ohio 2007) ("As the lower court noted, 'the language of the "special circumstances" provision implies fact-specific circumstances.'"); *In re Armstrong*, 2007 WL 1544591, *2, 2007 Bankr.LEXIS 1812, *6 (Bankr. N.D.Ohio 2007) ("The examples of special circumstances in § 707(b)(2)(B)(i) are not exhaustive; they are merely illustrative of the type of circumstances that Congress found warranted an adjustment to the disposable income calculation under the means test.") (internal citations omitted).

The Court first finds that UST met the initial threshold under § 707(b)(1) by establishing that Debtors' debts are primarily consumer debts. Debtors do not dispute that their debts are primarily consumer debts; they checked the box on the first page of the Petition indicating the "nature of debts" is "primarily consumer debts." (Petition at 1.) It is also beyond dispute that Debtors' annual income exceeds the $58,475 median annual income ("Median Income") for a family of three in Ohio[3] based on Census Bureau Median Income by Family Size (Cases Filed On and After February 1, 2007). Debtors are both employed, by Kent State University and Ashtabula County, respectively. (*See* pay stubs attached to Response.)

■ The only issue remaining before the Court, therefore, is Debtors' contention that repayment of their student loans constitutes a "special circumstance" that rebuts the presumption of abuse.

Several courts have held that student loans do constitute special circumstances. The Bankruptcy Court for the District of Delaware, in *In re Haman*, 366 B.R. 307 (Bankr.D.Del.2007), appears to be the first bankruptcy court to address whether student loan payments are special circumstances that rebut the presumption of abuse in § 707(b)(2)(A). In the *Haman* case, the debtor, who was obligated to repay her son's student loans,[4] argued that "because the obligation was non-dischargeable, it constituted a special circumstance 'for which there is no reasonable alternative.'" *Id.* at 310. After finding that there was "no dispute that the debtor had fulfilled [the procedural] requirements" for asserting a special circumstance, the Court then held "that section 707(b)(2)(B) does not require a debtor to demonstrate special circumstances of an involuntary nature." *Id.* at 312–13. The court recognized that (i) the debtor was a co-signor on her son's student loans, and (ii) it was unreasonable to have her son resume the monthly payments because of his medical condition. *Id.* at 315. Ultimately, the court denied the motion to dismiss and "conclude[d] that the [d]ebtor has no reasonable alternative but to incur the monthly expenses for her son's student loan obligation." *Id.* at 318.

*In re Martin*, 371 B.R. 347 (Bankr. C.D.Ill.2007), reviewed the state of the law regarding whether student loans constitute "special circumstances." The bankruptcy

---

**3.** Debtors' Declaration states that they have a 16 month old daughter. (Decl. ¶ 4.)

**4.** Debtor co-signed for her son's student loans. When he developed psychological dis-

orders, debtor made payments on the loans; however, there was a balance of more than $22,000.00 at the time debtor filed her petition. *Haman*, 366 B.R. at 310.

court noted that, in addition to the *Haman* case, *In re Delbecq*, 368 B.R. 754 (Bankr. S.D.Ind.2007), and *In re Templeton*, 365 B.R. 213 (Bankr.W.D.Okla.2007) found repayment of student loans to come within the rubric of special circumstances that rebut the presumption of abuse in § 707(b)(2). *Martin*, 371 B.R. at 352. The *Martin* court found "the reasoning of *Templeton*, *Haman*, and *Delbecq* persuasive. Here, the [d]ebtors have acknowledged the non-dischargeability of their student loan debt and they have no reasonable alternative other than to pay the debt." *Id.* at 356.

In the instant case, UST argues that Debtors have failed to meet the procedural requirements to establish special circumstances, as set forth in § 707(b)(2)(B). This was not an issue in any of the cases cited above. In *Haman*, the court noted that "[f]or the [d]ebtor to successfully demonstrate a special circumstance, she must fulfill both the procedural and substantive requirements of section 707(b)(2)(B) .... [t]here is *no dispute* that the *[d]ebtor has fulfilled these requirements.*" *Haman*, 366 B.R. at 312 (emphasis added). In *Martin*, the Court noted that "[t]he statute places the burden on the [d]ebtors to present their 'special circumstances' in a detailed manner." *Martin*, 371 B.R. at 352. Without elaboration about what was necessary to constitute procedural compliance, the court stated that each of the debtors' "several 'special circumstances' ... [would] be reviewed to determine compliance with the statute and developing law." *Id.* at 353. The procedural issue was not discussed in *Delbecq*.

The *Templeton* court found as follows:

Here, the Court concludes that the Debtors have carried their burden to document the additional expenses for their student loans. The Court further finds that they have provided a detailed

explanation for the additional expenses, namely that the loans were used to pay for their education and pertinent living expenses. The Debtors have supported the accuracy of their records via their affidavit.

365 B.R. at 216 (citations to record omitted).

In the instant case, Debtors have submitted a Declaration in an effort to fulfill the procedural requirements of § 707(b)(2)(B). Attached to their Declaration are billing statements for each of the student loans at issue, which provide the "documentation for such expense," as required in § 707(b)(2)(B)(ii)(I). Debtors have sworn and attested to the accuracy of the statements in the Declaration, which comports with the requirement of subsection (B)(iii). The additional student loan expenses substantiated by Debtors in the Declaration would be sufficient to rebut the presumption of abuse based solely upon Form B22A. Therein, Debtors list their disposable income as $233.04, which is $144.96 less than their monthly student loan payments of $338.00. If Debtors' student loan payments were accepted by this Court as special circumstances, Debtors' current monthly income would be negative $114.96, thus satisfying all of the requirements to rebut the presumption of abuse. 11 U.S.C. § 707(b)(2)(B).

However, Debtors have failed to meet the requirement in § 707(b)(2)(B)(ii)(II), which requires "a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." The Declaration provides:

Although we both work good jobs with a combined average net income of $4,145.00 per month, our expenses amount to $3,927.03 per month, *including* two car payments, *the two student loans* and $400/mo [sic] daycare for our

16 month old daughter. We estimate that after our anticipated monthly expenses are paid, that we will have less than $250 per month remaining which we expect to use for unexpected expenses for our daughter, unexpected car expenses and unexpected expenses in the new home we are now renting[.] (Declaration, ¶ 4)(emphasis added).

Debtors' Declaration establishes that Debtors will have net disposable income of approximately $250.00 after making their student loan payments. This is consistent with Debtors' Amended Schedule J, which includes the expenses for both student loans and results in $171.81 in monthly net income. (Amended Schedule J, line 20c.) Debtors' Declaration and Amended Schedule J merely establish that their actual expenses are less than the expenses allowable for purposes of the means test. Debtors' Declaration does not provide any explanation about why the student loan payments in this case constitute special circumstances that rebut the presumption of abuse.

The cases cited above have all recognized that student loans are generally not dischargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(8). Because such debt is not dischargeable and must be paid, the *Haman, Martin, Templeton,* and *Delbecq* courts reasoned that the debtor(s) did not have any "reasonable alternative" to paying the student loans and, consequently, such debt constituted special circumstances.[5] See *Haman,* 366 B.R. at 315; *Delbecq,* 368 B.R. at 759; *Templeton,* 365 B.R. at 216; and *Martin,* 371 B.R. at 357. If exception to discharge is all that is necessary to constitute special circumstances, debts including, but not limited to, those relating to fraud (§ 523(a)(4)), willful and malicious injury to a person or property (§ 523(a)(6)), and death or personal injury resulting from operation of a motor vehicle, vessel or aircraft while intoxicated (§ 523(a)(9)) would all constitute special circumstances that overcome the presumption of abuse.

This Court is not persuaded that merely because a debt is not dischargeable it can or should constitute a special circumstance. If Congress had wanted to make any or all of the exceptions to discharge a special circumstance, it could have chosen to do so. It did not. This Court does not find any basis in the Bankruptcy Code or case law to support a *per se* rule that having no reasonable alternative to paying a nondischargeable debt constitutes special circumstances.

Section 707(b)(2)(B)(i) requires that "the presumption of abuse may only be rebutted by demonstrating special circumstances . . . to the extent such special circumstances that [sic] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." Here, Debtors not only fail to set forth any circumstances that are unusual, they admit that, even taking the student loan payments into consideration, they have monthly disposable income. The Declaration does not indicate how, when, or why Debtors incurred the student loan debt, but the Response states that "debtors are both college graduates who funded their education with guaranteed student loans. . . . Their combined payments are $338.00 per month (incorrectly listed by counsel at $640 per month) and are non-dischargeable. They have no other reasonable alternative but to re-pay these loans." (Resp. at 2.) As a

---

5. These courts have also found that special circumstances need not be the result of an involuntary act.

consequence, it appears that Debtors incurred the student loan debt in the ordinary course of acquiring their educations and without any special circumstances.

 The District Court, in reversing *In re Thompson*, 350 B.R. 770 (Bankr. N.D.Ohio 2006), stated: "Retirement plan loans are neither extraordinary nor rare; many individuals take loans for many different reasons, and they are all required to repay the loans. Without more, a situation as common as the withdrawal of one's retirement funds cannot be a 'special circumstance' within the accepted definition of this term." *Eisen v. Thompson*, 370 B.R. at 773. Similarly, funding higher education through the use of student loans is becoming ubiquitous. It cannot be argued that having a student loan is rare or unusual; therefore, Debtors' obligation to repay their student loans, standing alone, cannot constitute special circumstances.

Although Debtors' student loans are non-dischargeable, (Resp. at 2), Debtors acknowledge that—even after including payment of both student loans—they still have disposable income that exceeds the presumptive abuse standard.[6] This Court cannot find that, under these facts, payment of Debtors' student loans constitutes special circumstances that rebuts the presumption of abuse. As a consequence, this Court finds the Motion to Dismiss to be well taken on the basis of 11 U.S.C. § 707(b)(2). The Court will conditionally grant the Motion to Dismiss, but will provide Debtors ten (10) days to convert their case to chapter 13 before entering dismissal.

An appropriate Order will follow.

**ORDER CONDITIONALLY GRANTING MOTION TO DISMISS**

For the reasons set forth in this Court's Memorandum Opinion entered this date, United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(1) is conditionally granted, as set forth herein. The Court will hold the execution of this order in abeyance for ten days from the date of this Order to allow Debtors to convert their case voluntarily to one under chapter 13. If Debtors fail to convert this case within such ten-day period, this case shall be dismissed without further order of the Court.

---

**6.** The Declaration states that Debtors "will have less than $250 per month remaining[.] (Decl. ¶ 4.) Two hundred fifty dollars multiplied by 60 equals $15,000.00, which exceeds the $10,950.00 threshold amount for presumption of abuse."