In re Guillermo Alberto CARRILLO and Gabriela Carrillo, Debtors.

No. 2:09–bk–13658–RJH.

United States Bankruptcy Court, D. Arizona.

Nov. 25, 2009.

Peter Gustafson, Gustafson Law Office, P.L.L.C., Glendale, AZ, for Debtors.

Christopher J. Pattock, Office of the U.S. Trustee, Phoenix, AZ, for U.S. Trustee.

## OPINION DENYING NONDIS-CHARGEABLE STUDENT LOANS AS SPECIAL CIRCUMSTANCES

RANDOLPH J. HAINES, Bankruptcy Judge.

Before the Court is United States Trustee's ("UST") Motion to Dismiss Case Pursuant to 11 U.S.C. §§ 707(b)(2) or 707(b)(3)[1] ("Motion to Dismiss"). In an issue of first impression for this Court, the primary issue is whether Debtors' nondischargeable student loans may constitute a "special circumstance" to overcome the statutory presumption of abuse. For the reasons set forth below, this Court finds

that Debtors have failed to rebut the presumption of abuse under § 707(b)(2) because under the circumstances of this case, Debtors' student loan debts do not constitute a "special circumstance."

## DISCUSSION

■ The United States Trustee has moved to dismiss the Chapter 7 case filed by Guillermo Alberto Carrillo and Gabriela Carrillo ("Debtors") for presumed abuse pursuant to § 707(b)(2). A court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of Chapter 7.[2] The presumption of abuse may arise based upon a detailed calculation, commonly referred to as the "means test," of the debtor's income from the six-month period immediately preceding the petition date minus certain allowed expenses.

Under the means test, the presumption of abuse arises "if the debtor's current monthly income[3] reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or (II) $10,950."[4] Put another way, a Chapter 7 filing is presumed to be an abuse if after deducting certain allowable expenses, the debtor's remaining income, as calculated over a five-year period, is (1) greater than $10,950; or (2) between $10,950 and $6,575, and will pay more than 25 percent of the debtor's unsecured debt.

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. *See* § 707(b)(1).

3. Current Monthly Income (CMI) is defined by the Bankruptcy Code as the average monthly income from all sources that the debtor and the debtor's spouse receive during the six-month period immediately preceding the commencement of the case. 11 U.S.C. § 101(10A)(A).

4. § 707(b)(2)(A)(i).

Debtors' obligations are primarily consumer debts, and their nonpriority unsecured debts total $90,465. Debtors' claimed current monthly income is $7,978 (or $95,736 annualized), which exceeds the median income of $71,867 for a household of four in Arizona. Debtors claim monthly expenses of $7,562. Subtracting Debtors' monthly expenses from their current monthly income leaves $414[5] in monthly disposable income. Multiplying Debtors' monthly disposable income by 60 equals $24,962, which substantially exceeds $10,950, the amount necessary to establish a presumption of abuse pursuant to § 707(b)(2)(A)(i). Accordingly, Debtors indicated that the presumption of abuse arises.

If a debtor's Chapter 7 filing is presumed to be an abuse under the means test analysis, the debtor may only rebut the presumption "by demonstrating special circumstances ... to the extent such special circumstances ... justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."[6]

Debtors assert that their nondischargeable student loan debts totaling $456 per month constitute a "special circumstance" sufficient to rebut the presumption of abuse.[7] Debtors argue that their student loan debts should be considered a "special circumstance" because for the past three years they have only been able to make interest-only payments on the first mortgage on their home.[8] Both Debtors have graduated from college, and deferment of payments is apparently not possible. The U.S. Department of Education and Wells Fargo loans were each consolidated from several loans years ago, and Debtors contend that no further restructuring is feasible.

To demonstrate "special circumstances," a debtor must meet certain procedural and substantive requirements. The procedural requirements are straightforward: a debtor must "itemize each additional expense or adjustment of income" and provide "(I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable."[9] The debtor must also attest under oath to the accuracy of the information provided to demonstrate that the additional expenses or adjustments to income are required.[10]

The substantive requirements for demonstrating "special circumstances" are less clear. The statutory language provides that the "special circumstance" must (1)

---

5. The UST calculates Debtors' monthly expenses at $7,541, instead of the reported $7,562, and monthly disposable income of $437, rather than the reported $414, but notes that the difference is inconsequential.

6. § 707(b)(2)(B)(i).

7. Debtors claim student loan debts of $199 per month to Wells Fargo, $68 per month to Wachovia, and $189 per month to the U.S. Department of Education. The original U.S. Department of Education payment was $96 per month, which is reflected in the last payment Debtors made in April 2003, but Debtors explain the amount was raised to $189 per month following a default. The billing statement, however, does not reflect any current payments due.

8. Debtors' current monthly mortgage payment is $1,352, which reflects a temporary catch-up payment toward arrears under an agreement they reached with their lender. The lowest monthly payment option their lender offers that would allow for payments towards the principal is $1,800, which would increase their monthly mortgage costs by $448, exceeding their claimed $414 in monthly disposable income.

9. § 707(b)(2)(B)(ii).

10. § 707(b)(2)(B)(iii).

justify additional expenses or a reduction in income (2) for which there is no reasonable alternative. The Bankruptcy Code does not define "special circumstances," although it provides two examples: "a serious medical condition or a call or order to active duty in the Armed Forces." [11]

■■■ To determine whether the Debtors' student loans constitute a "special circumstance" under § 707(b)(2)(B), the Court starts with the language of the statute.[12] If the statutory language is plain, "the sole function of the courts is to enforce it according to its terms." [13] If the language of a statute is unclear, courts may resort to legislative history and "the intention of the drafters." [14]

■■■ Applying these principles of statutory interpretation, this Court concludes that the examples given in the statute are not meant to be exhaustive. Congress used the words "such as," implying that the examples are merely illustrative of the situations that might constitute a "special circumstance." The legislative history of § 707(b)(2)(B) confirms this conclusion. The original text did not include examples of "special circumstances." According to Senator Sessions, who proposed the additional language, the intent in providing the examples was not to define "special circumstances" but to ensure that "those incapable of paying back their debt due to military service or a serious medical condition may not be required to do so." [15]

The statute is not clear as to whether the "special circumstances" must be of an involuntary nature or otherwise beyond the debtor's control. The examples given—a serious medical condition and a call to active duty—will frequently involve forces outside a debtor's control. But a serious medical condition may arise from a debtor's conscious choices, and unless a draft is enacted, a call to active duty can only result from voluntary membership in the armed forces. The case law is similarly divided on the question.[16]

In the specific context of student loans, some courts have concluded that it is not the obligation to repay a loan itself that

11. § 707(b)(2)(B)(i).

12. *Duncan v. Walker*, 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

13. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

14. *Id.* at 242, 109 S.Ct. 1026 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).

15. 151 CONG. REC. S1834, S1845–46 (2005) (statement of Sen. Sessions).

16. *Compare In re Robinette*, 2007 WL 2955960 at *4 (Bankr.D.N.M.2007) ("Nothing in the language of the statute requires that the circumstances be an act outside of a debtor's control.... Nor must the special circumstance be unanticipated."); *In re Turner*, 376 B.R. 370, 378 (Bankr.D.N.H.2007) (declining to adopt a rule that a "special circumstance" must be "beyond a debtor's reasonable control" or "truly unavoidable") *with In re Lightsey*, 374 B.R. 377, 381–82 (Bankr.S.D.Ga. 2007) ("The exception does not permit every conceivable unfortunate or 'unfair' circumstance to rebut the presumption of abuse, but includes only those circumstances that cause higher household expenses or adjustments of income 'for which there is no reasonable alternative,' i.e., they are unforeseeable or beyond the control of the debtor."); *In re Delbecq*, 368 B.R. 754, 756–57 (Bankr.S.D.Ind. 2007) ("[T]he plain meaning of 'special' provides some instruction to the Court that the expense or adjustment to income in question must be out of the ordinary or exceptional in some way."); *In re Armstrong*, 2007 WL 1544591 at *2 (Bankr.N.D.Ohio 2007) (describing a "special circumstance" as "one that is out of the ordinary for an average family and leaves the debtor with no reasonable alternative but to incur the expense").

qualifies as a "special circumstance." Instead, the circumstances that led to incurring the debt must be special to justify the inclusion of the additional expense in the means test. These courts focus on the reasons the debtor incurred the debt, noting that there is rarely anything special about the incurrence of student loans, which have become ubiquitous.[17]

But this Court is not sure that the circumstances leading to the incurring of student loan debts would even qualify as "special circumstances" for purposes of § 707(b)(2)(B)(I). Since Debtors here have not pointed to any "special circumstances" leading them to incur their student loan obligations, the Court assumes they incurred the loans in the ordinary course of obtaining their college educations. Without more, the Court is not persuaded that Debtors' student loan obligations are sufficient to constitute a "special circumstance" within the statutory meaning of the term.

Debtors argue that the nature of their student loans as nondischargeable in bankruptcy makes them a "special circumstance." Debtors are correct that student loan debts are treated differently from other unsecured debts in certain respects. Under the Bankruptcy Code, student loan debts are not dischargeable "unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." [18]

The Ninth Circuit applies the three-part *Brunner* test to determine whether excepting all or part of a student loan debt from discharge will impose an undue hardship under § 523(a)(8).[19] Under this test, a debtor must demonstrate

> (1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.[20]

Undue hardship is an exacting standard, and Debtors here do not claim to meet it. Consequently, their loans are nondischargeable and will have to be repaid.

Courts disagree over whether to consider the nature of student loan debts as generally nondischargeable in determining whether they constitute a "special circumstance." Some courts have concluded that student loan debts qualify as *per se* "special circumstances" because they are nondischargeable and therefore there is no reasonable alternative to repayment.[21]

However, if nondischargeability standing alone were sufficient to constitute a "spe-

17. *See, e.g., In re Pageau,* 383 B.R. 221, 228 (Bankr.D.N.H.2008) (concluding payments on student loans incurred solely to secure a more advantageous income or to enter a different vocation are not "special circumstances"); *In re Vaccariello,* 375 B.R. 809, 816 (Bankr. N.D.Ohio 2007) (concluding obligation to repay student loans, standing alone, could not constitute "special circumstances" when "it appears that Debtors incurred the student loan debt in the ordinary course of acquiring their educations and without any special circumstances").

18. 11 U.S.C. § 523(a)(8).

19. *See In re Pena,* 155 F.3d 1108, 1112 (9th Cir.1998) (citing *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987)).

20. *In re Saxman,* 325 F.3d 1168, 1173–74 (9th Cir.2003) (citing *Pena,* 155 F.3d at 1111; *Brunner,* 831 F.2d at 396).

21. *In re Knight,* 370 B.R. 429, 437–38 (Bankr. N.D.Ga.2007); *Delbecq,* 368 B.R. at 759–61.

cial circumstance," Congress would have said so.[22] Or, more likely, instead of making nondischargeable debts a "special circumstance," Congress would have simply identified them as an allowable expense, as it did for priority claims in § 707(b)(2)(A)(iv). Congress' failure to treat nondischargeable debts the same as priority debts suggests that they should not be regarded as "special circumstances" to achieve the same result.

Other courts have concluded that the "special circumstances" exception does not apply to student loan debts merely because they are nondischargeable but because repayment of the obligation "becomes onerous due to catastrophic illness, military deployment/activation, or similar post-contractual disasters or misfortunes."[23] Generally, courts have found a reasonable alternative to repayment lacking only for documented income reductions or unusual expenses that would have to be paid in full during the hypothetical Chapter 13 plan period.[24]

Despite the decisions in *Delbecq* and *Knight* holding that there is no reasonable alternative to repayment of nondischargeable student loans but to raise a debtor's expenses to avoid the means test presumption of abuse, this Court concludes that Chapter 13 repayment is a reasonable alternative.[25]

■ Congress intended the means test as a mechanical formula for determining whether Chapter 7 debtors have the means to repay a portion of their debts and should therefore be required to do so by filing a Chapter 13 in order to obtain a discharge.[26] Congress included the "special circumstances" exception as a safeguard to allow courts to consider additional expenses or reductions in income not accounted for in the means test that would prevent meaningful repayment of a debtor's obligations under a Chapter 13 plan.[27]

■ Some courts have declined to consider the potential return a debtor's unsecured creditors might receive in a hypothetical Chapter 13 plan in determining whether "special circumstances exist."[28] But given Congress' clear intent to steer debtors who can pay a higher portion of their debts into filing under Chapter 13, this Court concludes that the hypothetical Chapter 13 should be considered when determining whether nondischargeable student loans constitute a "special circumstance" sufficient to rebut the statutory presumption of abuse.

**22.** *See Lightsey,* 374 B.R. at 381 n. 3.

**23.** *Id.*

**24.** *Cf. In re Heath,* 371 B.R. 806 (Bankr. E.D.Mich.2007) (reduction in income due to disability); *In re Littman,* 370 B.R. 820 (Bankr.D.Idaho 2007) (postpetition court-ordered support); *In re Armstrong,* 2007 WL 1544591 (maintenance of separate household to preserve status of custodial parent); *In re Batzkiel,* 349 B.R. 581 (Bankr.N.D.Iowa 2006) (extraordinary commuting expenses).

**25.** *See Lightsey,* 374 B.R. at 381 n. 3.

**26.** *See* Eugene R. Wedoff, *Means Testing in the New § 707(b),* 79 AM. BANKR.L.J. 231 (2005).

**27.** *See* S. Rep. 106–49 (1999).

**28.** *See, e.g., Pageau,* 383 B.R. at 231 (concluding the fact that unsecured creditors might receive a minimal dividend in a hypothetical Chapter 13 plan is not relevant to the determination of "special circumstances" under the Bankruptcy Code); *In re Haman,* 366 B.R. 307, 317–18 (Bankr.D.Del.2007) ("Calculations under the means test have been purposefully circumscribed by Congress and should not include future or foreseeable circumstances, including what could or would happen to a debtor's income and expenses in a case under chapter 13.").

Although debtors are permitted to maintain regular student loan payments as part of a Chapter 13 plan, they are not required to do so.[29] Because Debtors here would not be required to make student loan payments while in Chapter 13, their student loan debts would not leave them with insufficient income to meet their obligations under a Chapter 13 plan. Debtors could propose a Chapter 13 plan that provides for monthly plan payments of $414 and no payments on their student loans other than their pro-rata portion of the plan payments.

Treating the nondischargeability of student loans as *per se* "special circumstances" would effectively reverse the Ninth Circuit Bankruptcy Appellate Panel's holding in *In re Labib–Kiyarash.*[30] It would permit the student loans to be paid in full while all other unsecured debt is paid nothing and is discharged, despite the fact that the means test shows the debtor should be required to make meaningful payments under a Chapter 13 plan. And if the student lender's collection methods really do create "special circumstances" requiring maintenance of payments pursuant to § 1322(b)(5), then they should be used to demonstrate the fairness of the discrimination under § 1322(b)(1)[31] rather than special circumstances to permit a Chapter 7 discharge.

Although Debtors argue that their student loan debts should be considered a "special circumstance" because they are unable to make more than interest-only payments on their homestead, Debtors have not demonstrated any unusual circumstances leading to any reduction in income or any unusual expenses for which there is no reasonable alternative but to pay. Consequently, the "special circumstances" exception has not been satisfied in this case, and Debtors have not rebutted the presumption of abuse.

## CONCLUSION

Because there are no special circumstances that rebut the presumption of abuse,

IT IS ORDERED that this Chapter 7 case will be dismissed unless Debtors move to convert to Chapter 11 or 13 within thirty (30) days.

---

29. *See* § 1322(b)(5).

30. 271 B.R. 189 (9th Cir.BAP2001).

31. *Cf. In re Knecht,* 410 B.R. 650 (Bankr. D.Mont.2009).